**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James P. LYNCH, Defendant–
Appellant.**

**No. 00–1058.**

United States Court of Appeals,
Sixth Circuit.

May 29, 2001.

Before JONES and DAUGHTREY, Circuit Judges, and ECONOMUS,* District Judge.

PER CURIAM.

The defendant, James Lynch, was convicted by a jury of aiding and abetting the making of a false statement in the purchase of a firearm and of being a felon in possession of a firearm. On appeal, Lynch contends that the district court erroneously admitted alleged hearsay testimony and that sufficient evidence was not adduced to support the two convictions. We find no reversible error and affirm.

The evidence at trial established that during an investigation of a Detroit gun shop, Alcohol, Tobacco, and Firearms agents discovered that a former police detective, Robert Ferensic, had purchased a Colt .22 caliber rifle. Ferensic, who had been arrested for a crime, found not guilty by reason of insanity, and sentenced to not more than 60 days in a mental institution, was accompanied by the defendant at the time of the transaction. According to the sales clerks, one of whom had previously worked with Lynch, Ferensic spoke with the defendant throughout the transaction, asked Lynch about the purchase of a particular scope for the rifle, and was told by the defendant that "money's no object." Although Lynch paid the $1,389 .66 bill with his own credit card, Ferensic filled out the requisite firearms form and, in the defendant's presence, claimed that he (Ferensic) was the owner of the weapon and that he (Ferensic) had never been hospitalized in a mental institution.

Because one of the ATF agents was aware of Ferensic's prior commitment to a mental health institution, he obtained a warrant to search Ferensic's dwelling for the rifle purchased under false pretenses. Although the Colt rifle was not found during that search, Ferensic did provide the agent with information that enabled him to secure another warrant to search the home of the defendant's brother, Thomas Lynch. While at Thomas Lynch's house, the agent had a telephone conversation David Goldenberg, a lawyer then representing Ferensic who, in an effort to forestall a subsequent, inevitable search of the *defendant's* home, offered to have Lynch himself bring the rifle that was the subject of the investigation to Goldenberg's office, where the ATF agent could then retrieve it.

Upon arriving at Goldenberg's office, ATF agents observed defendant Lynch leaving the building with another man and carrying an empty gun case. When asked by an agent whether he had dropped off a gun with Goldenberg, Lynch remarked, "What gun? I don't know what you're talking about." Nevertheless, upon entering the attorney's office, the agents spotted the firearm sold on September 17, 1997, along with various accessories contained in plastic bags. Even though subsequent fingerprint analysis revealed the defendant's prints on a plastic bag holding a gun sling, both Goldenberg and Neal Sweasy, the man accompanying Lynch to the office, testified for the defense that the defendant had not handled the gun itself. In fact, both defense witnesses testified that Sweasy carried the gun into Goldenberg's office in the gun case and, after removing the weapon, gave the empty case to Lynch to carry out of the office.

* The Hon. Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

After recovering the weapon, the agents obtained a search warrant for the defendant's residence and found a second Colt rifle that was similar to the gun purchased on September 17. Sweasy, Lynch's roommate, insisted that both Colt rifles were his, that he had purchased the second firearm two days prior to Ferensic's purchase, and that Ferensic had obtained the weapon that had been left with Goldenberg for Sweasy as a favor.

Lynch was nevertheless arrested for being a felon in possession of a firearm. On the way to the police station, after receiving appropriate warnings of his constitutional right to remain silent, Lynch volunteered to a federal agent that he "was going to beat this case" because he had been "advised by an Inkster Police detective [Ferensic] that he could possess a firearm five years after a felony conviction." (The arresting agent explained in court testimony that Lynch's understanding of the law was faulty, that the defendant could not have his right to possess firearms restored absent a petition to the Bureau of Alcohol, Tobacco, and Firearms, but and Lynch had yet to file such a petition with the agency.)

At trial, the prosecution and the defense stipulated that Lynch had previously been convicted of a felony and that the Colt rifle that was the subject of the prosecution "traveled in and affected interstate commerce." Based upon those stipulations and upon the evidence adduced, the jury convicted Lynch of aiding and abetting the making of a false statement in purchasing a firearm (the representation that Ferensic was the true owner of the weapon) and of being a felon in possession of that firearm.

■ On appeal, Lynch first contends that the district court erred when it admitted into evidence certain hearsay testimony. Although the defendant concedes that he did not object to this evidence in a timely manner, he argues that testimony by Agent Jones regarding Goldenberg's statements that the lawyer would "get the gun ... from James Lynch," and "that James Lynch would be dropping off the other firearm" at Goldenberg's office constitutes inadmissible hearsay and should have been excluded from the jury's consideration. Because Lynch was given the opportunity to question Goldenberg concerning the statement, the admission of the testimony did not affect substantial rights of the defendant. We thus consider this allegation of error waived. *See* Fed. R.Evid. 103(a)(1) and (d).

We also find no merit to the defendant's challenge to the sufficiency of the convicting evidence. Ordinarily, we would review such a challenge to determine whether, taking the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In this case, however, despite making a motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29 at the close of the government's case, the defendant failed to renew that motion at the close of all the proof. As a result, appellate review of his challenges to the legal sufficiency of the convicting evidence is limited to a determination of whether a manifest miscarriage of justice has occurred. *See United States v. Abdullah,* 162 F.3d 897, 903 (6th Cir.1998). Such "[a] 'miscarriage of justice' exists only if the record is 'devoid of evidence pointing to guilt.'" *Id.* (citing *United States v. Price,* 134 F.3d 340, 350 (6th Cir.1998)). Clearly, neither conviction at issue in this appeal was rendered in such a complete absence of supporting proof.

■ First, to sustain the defendant's conviction under 18 U.S.C. § 922(a)(6), the

**538**

evidence would have to establish that Lynch (1) aided and abetted Ferensic, (2) in making a knowingly false statement to a firearms dealer, (3) in the acquisition of a firearm, (4) so as to deceive the dealer as to the lawfulness of the sale. *See United States v. Petitjean,* 883 F.2d 1341, 1345 (7th Cir.1989). At trial, the prosecution produced testimony that Lynch stood by Ferensic as the former police detective made arrangements to buy a gun and then filled out required forms indicating that Ferensic himself was the proper owner, all the time aware of the fact that such statement was false. In fact, much of the evidence offered at trial indicated that Lynch himself was the true owner of the weapon. For example, the defendant ratified the selection of a scope for the rifle, stated that price was no object in the selection of the firearm and accessories, paid using his own credit card, was seen carrying the empty gun case from Goldenberg's office, left his fingerprints on a bag holding an accessory for the rifle, and proclaimed his confidence in his ability to exonerate himself of the charge. Moreover, even if Lynch himself was not the owner of the rifle and, as his defense strategy suggested, *Sweasy* was the rightful owner, Lynch still aided and abetted the charged offense because he was aware that Ferensic's answer on the firearm form claiming ownership of the weapon was false. This challenge is, therefore, without merit.

Likewise, no manifest miscarriage of justice occurred as a result of Lynch's conviction for being a felon in possession of a firearm. To establish a defendant's guilt of that offense, the government must prove "(1) that the defendant had a previous felony conviction, (2) that the defendant possessed a firearm, and (3) that the firearm had traveled in or affected interstate commerce." *United States v. Kincaide,* 145 F.3d 771, 782 (6th Cir.1998) (citing *United States v. Moreno,* 933 F.2d

362, 372 n. 1 (6th Cir.1991)). At his trial, Lynch stipulated to his prior felony conviction and to the firearm's connection with interstate commerce. Consequently, the prosecution was left to prove only that Lynch actually or constructively possessed the Colt rifle. The same testimony used to establish the defendant's guilt of the false-statement offense, along with the statement by Goldenberg regarding Lynch's role in retrieving the weapon, also provided evidence that Lynch did indeed possess the improperly purchased firearm at some time. Hence, this challenge by the defendant is also without merit.

For the reasons set out above, we AFFIRM the judgment of the district court.